Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:   516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER LAPINSKI,<br><br>Plaintiff,<br><br>vs.<br><br>SPAR GROUP, INC., WILLIAM H. BARTELS, JOHN BODE, JAMES R. GILLIS, LINDA HOUSTON, and MICHAEL R. MATACUNAS,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Christopher Lapinski ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against SPAR Group, Inc. ("SPAR" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Highwire Capital, LLC ("Parent"), through wholly owned subsidiary

- 1 -

Highwire Merger Co. I, Inc. ("Merger Sub," and together with Parent "Highwire"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a September 3, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the deal, SPAR Group stockholders will receive $2.50 per share in cash upon completion of the Proposed Transaction.

3. On September 13, 2024, the Company filed its Preliminary Proxy Statement on Schedule PREM14A (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for SPAR, provided by the Company Management to the Special Committee of the

Company Board (the "Special Committee") and the Company's financial advisor, Lincoln International LLC ("Lincoln"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Lincoln, and provided to the Board and the Special Committee.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of New Jersey and, at all times relevant hereto, has been a SPAR stockholder.

8. Defendant SPAR, together with its subsidiaries, provides merchandising and brand marketing services in the Americas, the Asia-Pacific, Europe, Middle East, and Africa. SPAR is incorporated under the laws of the State of Delaware and has its principal place of business at 1910 Opdyke Court, Auburn Hills, MI 48326. Shares of SPAR common stock are traded on the Nasdaq Capital Markets (the "Nasdaq") under the symbol "SGRP."

9. Defendant William H. Bartels ("Bartels") has been a director of the Company at all relevant times.

10. Defendant John Bode ("Bode") has been a director of the Company at all relevant times.

11. Defendant James R. Gillis ("Gillis") has been Chair of the Company Board of Directors at all relevant times.

12. Defendant Linda Houston ("Houston") has been a director of the Company at all relevant times.

13. Defendant Michael R. Matacunas ("Matacunas") has been a director of the Company at all relevant times. In addition, Defendant Matacunas serves as the Company's Chief Executive Officer ("CEO") and President.

14. Defendants identified in ¶¶ 9-13 are collectively referred to as the "Individual Defendants."

15. Non-Party Highwire Capital, LLC transforms middle-market businesses by integrating innovative technologies with traditional operating models.

16. Non-Party Merger Sub is a wholly owned subsidiary of Parent, created to effectuate the merger.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the Nasdaq which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20. Defendant SPAR, together with its subsidiaries, provides merchandising and brand marketing services in the Americas, the Asia-Pacific, Europe, Middle East, and Africa.

21. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the August 14, 2024, press release announcing its 2024 Q2 financial results, the Company highlighted such milestones as follows: Net Revenues of $57.3 million; Gross Profit was $11 million; Gain on selling businesses of $4.9 million; and Net Income attributable to SPAR of $3.6 million, or $0.15 per diluted share, up 467%.

22. Speaking on these positive results, CEO Defendant Matacunas commented on the Company's positive financial results as follows, "Our second quarter results reflect a focus on simplification and driving growth in the Americas, specifically the U.S. and Canada. Our revenues in the second quarter were up 37% in the ongoing U.S. business and 14% in Canada. In addition, we continued to divest in underperforming assets in the second quarter resulting in a one-time $4.9 million capital gain and increasing our cash to $22 million. Our financials are stronger than they have ever been in the history of the company and demand for our services is growing."

23. CEO Defendant Matacunas furthered that sentiment by continuing on to say, "The last three years have seen a transformation of this business from a complex, joint-venture based, legally mired, trapped cash, hard to understand company to a focused, simplified, financially solid,

cash-rich, growing enterprise. At the same time, we have delivered value to our shareholders, expanded our client base and energized the organization. In effect, we changed two wheels of the car at the same time and I couldn't be prouder of this team."

24. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by SPAR.

25. Despite this upward trajectory, the Individual Defendants have caused SPAR to enter into the Proposed Transaction without providing requisite information to SPAR stockholders such as Plaintiff.

*The Flawed Sales Process*

26. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate the sale of the Company to Highwire.

27. The Proxy Statement fails to indicate what specific powers were granted to the Special Committee, including specifically, whether it had the power to veto the Proposed Transaction.

28. In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Highwire, and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

29. The Proxy Statement fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

31.     On September 3, 2024, SPAR and Highwire issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> AUBURN HILLS, Mich., Sept. 03, 2024 (GLOBE NEWSWIRE) -- SPAR Group, Inc. (NASDAQ: SGRP) ("SPAR", "SPAR Group" or the "Company"), a provider of merchandising, marketing and distribution services, announced today it has entered into a definitive agreement to be acquired by Highwire Capital ("Highwire"), an investment firm focused on transforming businesses through technology.
>
> Under the terms of the agreement, which has been unanimously approved by SPAR Group's Board of Directors, SPAR Group stockholders will receive $2.50 per share in cash, representing a 72% premium over the closing share price on the last trading day before the announcement and a 37.8% premium over SPAR Group's 30-day volume-weighted average share price. Upon approval by SPAR Group's stockholders and completion of the transaction, SPAR Group will become a privately held company, and its stock will no longer be traded on NASDAQ.
>
> Mike Matacunas, SPAR Group's President and CEO said, "I'm very pleased to be announcing this agreement today as the transaction will result in immediate and substantial value creation for our stockholders. This transaction represents a culmination of an extensive and lengthy review by our Special Committee and Board of Directors of strategic alternatives to provide value to our stockholders and offer financial flexibility for our company to pursue future growth initiatives."
> The transaction is expected to close in the fourth quarter of 2024, subject to the receipt of stockholder approval, regulatory approvals, and the satisfaction of other customary closing conditions.
>
> **Transaction Details**
>
> Highwire has obtained a debt financing commitment, the proceeds of which will be sufficient for Highwire to consummate the transaction contemplated by the merger agreement.
>
> Simultaneously with the execution of the merger agreement, William H. Bartels, a member of the SPAR Board and holder of approximately 20% of the outstanding shares, entered into a voting agreement and irrevocable proxy with Highwire.
>
> As a closing condition, the Company will have balance sheet cash of not less than $14,200,000 as of the closing date including all amounts expected to be received by the Company in connection with the disposition of any of the Company's entities.

Following the close of the transaction, SPAR Group will continue to be led by Mike Matacunas, who has been its President and CEO since early 2021.

*Potential Conflicts of Interest*

32. The breakdown of the benefits of the deal indicates that SPAR insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of SPAR.

33. Company insiders currently own large illiquid blocks of Company shares, all of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Title of Class | Name and Address of Beneficial Owner | Number of Shares Beneficially Owned | See Note # | Percentage |
| --- | --- | --- | --- | --- |
| *Greater than 5% Stockholder:* | | | | |
| Common Shares | Robert G. Brown | 7,203,530 | (1) (2) | 30.72% |
| *Directors and Officers:* | | | | |
| Common Shares | William H. Bartels | 4,747,337 | (1) (3) | 20.22% |
| Common Shares | Michael R. Matacunas | 756,915 | (1) (4) | 3.14% |
| Common Shares | Antonio Calisto Pato | 117,188 | (1) | * |
| Common Shares | Kori G. Belzer | 33,222 | (1) | * |
| Common Shares | William Linnane | 17,909 | (1) | * |
| Common Shares | Ronald Lutz | 17,678 | (1) | * |
| Common Shares | Fay DeVriese | 3,002 | (1) (5) | * |
| Common Shares | John Bode | -- | (1) | * |

| | | | | |
|---|---|---|---|---|
| Common Shares | James R. Gillis | -- | (1) | * |
| Common Shares | Linda Houston | -- | (1) | * |
| Common Shares | All Executives and Directors | 5,690,249 | | 23.60% |

34. In addition, Company insiders currently own large blocks of Company options, Company Restricted Stock Units ("RSUs"), and Company Phantom Stock Units, all of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| | Unvested Corporation RSUs | Unvested Corporation RSUs Cash Value[1] | Corporation Options Outstanding | Corporation Options Cash Value[2] | Corporation Phantom Stock Units Outstanding | Corporation Phantom Stock Units Cash Value[3] | Total Value[1] |
|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | |
| Michael R. Matacunas | 57,143 | $ 142,858 | 630,000 | $ 378,000 | -- | $ -- | $ 520,858 |
| Antonio Calisto Pato | -- | $ -- | -- | $ -- | -- | $ -- | $ -- |
| Kori G. Belzer | -- | $ -- | -- | $ -- | 158,249 | $ 395,623 | $ 395,623 |
| William Linnane | -- | $ -- | -- | $ -- | 158,249 | $ 395,623 | $ 395,623 |
| Ron Lutz | -- | $ -- | -- | $ -- | 158,249 | $ 395,623 | $ 395,623 |
| **Non-Employee Directors** | | | | | | | |
| William H. Bartels | -- | $ -- | 50,000 | $ 47,500 | -- | $ -- | $ 47,500 |
| John Bode | -- | $ -- | -- | $ -- | -- | $ -- | $ -- |
| James R. Gillis | -- | $ -- | -- | $ -- | -- | $ -- | $ -- |
| Linda Houston | -- | $ -- | -- | $ -- | -- | $ -- | $ -- |

35. In addition, employment agreements with certain SPAR executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

**Golden Parachute Compensation**

| Name | Cash($)(1) | Equity($)(2) | Perquisites/Benefits ($)(3) | Tax Reimbursements ($)(4) | Total($) |
|---|---|---|---|---|---|
| Michael R. Matacunas | $ 1,545,376 | $ 520,858 | $ 32,400 | $ -- | $ 2,098,634 |
| Antonio Calisto Pato | $ 257,380 | $ -- | $ 16,200 | $ -- | $ 273,580 |
| Kori G. Belzer | $ 394,590 | $ 395,623 | $ 24,300 | $ -- | $ 814,513 |
| William Linnane | $ 253,377 | $ 395,623 | $ 16,200 | $ -- | $ 665,200 |
| Ron Lutz | $ 255,544 | $ 395,623 | $ 6,200 | $ -- | $ 657,367 |

| Name | Base Salary Component of Severance | Bonus Component of Severance |
|---|---|---|
| Michael R. Matacunas | $ 700,000 | $ 845,376 |
| Antonio Calisto Pato | $ 175,000 | $ 82,380 |
| Kori G. Belzer | $ 262,500 | $ 132,090 |
| William Linnane | $ 170,000 | $ 83,377 |
| Ron Lutz | $ 170,000 | $ 85,544 |

36. The Proxy Statement also fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

37. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information illuminates the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38. Thus, while the Proposed Transaction is not in the best interests of SPAR, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

39. The SPAR Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially

misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

40. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

   a. Indicate what specific powers were granted to the Special Committee, including specifically, whether it had the power to veto the Proposed Transaction;

   b. Whether the confidentiality agreements entered into by the Company with Highwire differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

   c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Highwire, would fall away; and

   d. The totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

41. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board.

*Omissions and/or Material Misrepresentations Concerning SPAR's Financial Projections*

42. The Proxy Statement fails to provide material information concerning financial projections for SPAR provided by SPAR management to the Board, the Special Committee, and Lincoln and relied upon by Lincoln in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably the Proxy Statement reveals that as part of its analyses, Lincoln reviewed, "Pro forma financial projections for the fiscal years ending December 31, 2024 through December 31, 2027, excluding cash flows from the Japan Segment, the India Joint Venture, and the Mexico Joint Venture and including adjusted EBITDA calculations, as provided by Corporation management."

44. Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that SPAR management provided to the Board, the Special Committee, and Lincoln. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

45. With regard to the *Summary of the Financial Projections* provided by SPAR Management, the Proxy Statement fails to disclose material line items for the following metrics:

  a. Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

  b. Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate same;

  c. Operating Expense, including all underlying inputs, metrics, and assumptions used to calculate same;

  d. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;

  e. Total CAPEX, including all underlying inputs, metrics, and assumptions used to calculate same;

  f. Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same;

  g. Current Assets, including all underlying inputs, metrics, and assumptions used to calculate same;

  h. Total Assets, including all underlying inputs, metrics, and assumptions used to calculate same;

  i. Current Liabilities, including all underlying inputs, metrics, and assumptions used to calculate same;

  j. Total Liabilities, including all underlying inputs, metrics, and assumptions used to calculate same; and

  k. Total Liability and Equity, including all underlying inputs, metrics, and assumptions used to calculate same.

46. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

47. This information is necessary to provide Plaintiff in his capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

48. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Lincoln's financial analysis, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lincoln*

49. In the Proxy Statement, Lincoln describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

50. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the perpetuity growth rates of 3.00% utilized;

    b. The inputs, metrics, and assumptions used to determine the discount rates ranging from 12.75% to 14.25% utilized; and

    c. The Company's weighted average cost of capital utilized.

51. With respect to the *Selected Public Companies Analysis*, the Proxy Statement fails to disclose:

    a. The specific data analyzed for each of the selected public companies;

      b. The inputs, metrics, and assumptions used to determine the valuation multiples of 7.5x to 8.5x applied to the Company's 2024P EBITDA.

52. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

53. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public SPAR stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

54. Plaintiff repeats all previous allegations as if set forth in full herein.

55. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

56. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

57. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

58. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

61. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

62. Plaintiff repeats all previous allegations as if set forth in full herein.

63. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

64. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

65. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of SPAR's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

66. The Individual Defendants acted as controlling persons of SPAR within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause SPAR to engage in the wrongful conduct complained of herein. The Individual Defendants controlled SPAR and all of its employees. As alleged above, SPAR is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein

not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 25, 2024                    **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*